# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SHENA LYNN SIMPSON,
    Plaintiff,

   vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-801
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the

Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 20).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in December 2010,

alleging disability since October 26, 2009, due to bi-polar disorder, anxiety disorder, ADHD

(attention deficit hyperactivity disorder), rage disorder, dyslexia, PTSD (post-traumatic stress

disorder), and depression.[1] (Tr. 332). These applications were denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before

Administrative Law Judge (ALJ) Kenneth Wilson. Plaintiff and a vocational expert (VE)

appeared and testified at the ALJ hearing. On July 17, 2013, the ALJ issued a decision denying

---

[1]Plaintiff previously filed applications for benefits on November 13, 2006. (Tr. 110). Plaintiff's applications were
denied at the administrative level. (Tr. 139).

plaintiff's DIB and SSI applications.  Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ acknowledged that prior to the instant applications, plaintiff had filed

applications for DIB and SSI on November 13, 2006, alleging disability beginning October 28,

2006. (Tr. 22). Following a hearing on the previous applications, ALJ Deborah Smith had

issued a decision dated August 27, 2009, in which she found that plaintiff retained

> the residual functional capacity [RFC] to perform sedentary work as defined in 20
> CFR 404.1567(a) and 416.967(a), except she must not use foot controls on the left
> side. She can perform work in which little variation in job duties are expected.
> The claimant can work around others, including the public. However, she would
> do best in a job involving occasional, superficial interpersonal contact. She is
> capable of performing simple, repetitive tasks and some moderately complex
> routine tasks.

(Tr. 114). Upon consideration of the present applications and all of the evidence of record, the

ALJ determined that departure from the previously established RFC was warranted for the period

beginning after August 27, 2009, the date the decision was issued. (Tr. 22, citing *Drummond v.*

*Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997); Acquiescence Ruling 98-04(6);

*Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990);

Acquiescence Ruling 98-03(6).[2]

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The [plaintiff] has not engaged in substantial gainful activity since October 26, 2009, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: history of left leg tibial plateau fracture with ORIF (open reduction internal fixation), history of left knee arthroscopy and synovectomy disorders, osteoarthritis of the hip, obesity, anxiety disorder, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can perform postural activities on an occasional basis. She cannot operate foot controls with the left foot. She can perform overhead reach/work no more than two hours in an eight-hour workday. She should have no exposure to hazardous machinery or unprotected heights. She can understand, remember, and carry out simple routine repetitive tasks. She is able to maintain attention and concentration for two-hour periods across an eight-hour workday with normal breaks. She can interact appropriately with co-workers and supervisors on a superficial level and any

---

[2] Under these provisions, Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined unless certain conditions are met. AR 98-4(6), 1998 WL 283902, at *3; AR 98-03(6), 1998 WL 283901, at *3 ("When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . .").

contact with the public should be no more than occasional. The job could not have high production quotas.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1977 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 26, 2009, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 25-36).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[3] Plaintiff's past relevant work was as a waitress, a semi-skilled job which plaintiff performed at the medium level of exertion. (Tr. 35).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled sedentary occupations such as addressing clerk (200 jobs in the local economy and 25,000 jobs in the national economy), inspector (200 jobs in the local economy and 15,000 jobs in the national economy), and packager (400 jobs in the local economy and 30,000 jobs in the national economy). (Tr. 36).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff alleges three errors on appeal: (1) the ALJ's finding at step five of the sequential evaluation process is not supported by substantial evidence because the hypothetical question posed to the VE did not accurately portray plaintiff's physical and mental impairments; (2) the ALJ failed to properly weigh the medical opinions of record; and (3) the ALJ failed to properly

6

evaluate plaintiff's credibility. (Docs. 13 and 20). The Court will consider plaintiff's assignments of error in a different order than presented in the Statement of Errors.

### 1. Weighing of the medical opinions of record (Second assignment of error)

Plaintiff alleges as her second assignment of error that the ALJ erred in weighing the opinions of her treating orthopedist, Dr. Angelo Colosimo, M.D., and Dr. Paula Peake, M.D., plaintiff's primary care physician who assessed plaintiff's mental limitations. (Doc. 13 at 11-12; Doc. 20).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

7

C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ

declines to give a treating source's opinion controlling weight, the ALJ must balance the factors

set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to

give the opinion.  *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include

the length, nature and extent of the treatment relationship and the frequency of examination.  20

C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the

ALJ must consider the medical specialty of the source, how well-supported by evidence the

opinion is, how consistent the opinion is with the record as a whole, and other factors which tend

to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6);

*Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'"  *Cole*, 661 F.3d at 937 (citation omitted).  *See also* 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2); *Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the

ultimate weight afforded the treating physician opinion).  Those reasons must be "supported by

the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight."  *Cole*, 661 F.3d at 937 (citing SSR 96-2p).  This procedural requirement

"ensures that the ALJ applies the treating physician rule and permits meaningful review of the

ALJ's application of the rule."  *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Here, the ALJ gave several reasons for affording "little weight" to the opinions of

plaintiff's treating orthopedist, Dr. Colosimo, and to the opinions of plaintiff's primary care

physician, Dr. Peake. (Tr. 33-34). Plaintiff alleges that the ALJ did not provide any specific bases for his findings and the reasons he gave are not "good reasons" for declining to give the treating physicians' opinions "controlling weight." (Doc. 13 at 11-12). Contrary to plaintiff's allegation, the ALJ thoroughly reviewed the medical and other evidence of record and provided "good reasons" for giving less than "controlling weight" to the opinions of Drs. Colosimo and Peake. Those reasons are substantially supported by the record as discussed below.

### a. Treating orthopedist Dr. Colosimo

Dr. Colosimo performed knee and shoulder surgery on plaintiff and treated her for a knee condition, a shoulder injury, and complaints of hip pain. Dr. Colosimo issued four assessments of plaintiff's physical functional capacity. Dr. Colosimo assessed the following limitations:

- March 2, 2010 Basic Medical Assessment: No lifting; no restrictions on standing, walking, or sitting (Tr. 835)

- April 11, 2011 Basic Medical Assessment: Lift/carry 5 pounds; sit a total of 5 hours in an 8-hour workday and stand/walk a total of 2 hours and 30 minutes without interruption; markedly limited in pushing/pulling and bending; moderately limited in reaching and repetitive foot movements; not significantly limited in handling (Tr. 837-38).

- April 3, 2012 Basic Medical Assessment: No lifting; sit a total of 4 hours in an 8-hour workday and 20 minutes uninterrupted and stand/walk 1 hour and 10 minutes uninterrupted; extremely limited in pushing/pulling; markedly limited in repetitive foot movements; moderately limited in bending and hearing (Tr. 839-40)

- March 18-19, 2013 Basic Medical Assessment and Medical Assessment of Ability to Do Work-Related Activities (Physical): Lift 10 pounds; stand/walk a total of 1-2 hours in an 8-hour workday and 15 minutes without interruption and sit 6 hours and 1 hour without interruption; rarely balance; never stoop, crouch, kneel, climb or crawl; markedly limited in pushing/pulling and bending; moderately limited in repetitive foot movements; no restrictions on exposure to heights, moving machinery, or other environmental conditions (Tr. 780-85)

The ALJ afforded Dr. Colosimo's varying assessments "little weight" on the grounds the limitations he assessed were not supported by the objective medical evidence; they were not consistent with plaintiff's activities of daily living; and they were not supported by his treatment notes. (Tr. 33). Substantial evidence supports the ALJ's findings.

First, there is little objective or other medical evidence to support the severe lifting, standing/walking, and sitting limitations assessed by Dr. Colosimo. Although Dr. Colosimo restricted plaintiff to no lifting in March 2010, the month following her shoulder surgery (Tr. 835), the treatment notes from April 2010 show that plaintiff's shoulder condition improved significantly during the intervening month. (Tr. 688). Physical examination of the right shoulder disclosed no abnormal objective findings. (*Id.*). Plaintiff had full range of motion, strength was 5/5 and 4+/5, and the shoulder was neurovascularly intact distally. (*Id.*). The treatment notes reflect that plaintiff had discharged herself from physical therapy at that point, she was continuing to work out and swim at a gym she had joined, and her only symptom was "a little bit of weakness." (*Id.*). Plaintiff reported she was "completely pain free," she was "doing well," and she "[had] no complaints." (*Id.*). She was advised to continue to work on strengthening the shoulder. (*Id.*).

Plaintiff has not pointed to any objective findings that indicate her shoulder condition subsequently deteriorated and which support the severe lifting restrictions Dr. Colosimo imposed. In March 2011, plaintiff reported she had experienced "some upper back pain" after sustaining a fall when her knee gave out, and she reported secondary complaints of consistent hip pain. (Tr. 681-82). On physical examination, plaintiff had full range of motion of the shoulders and right hip and shoulder strength was intact. (Tr. 681). Yet, the following month Dr.

10

Colosimo assessed plaintiff as limited to lifting/carrying 5 pounds, he opined that she was markedly limited in pushing/pulling, and he assessed her as moderately limited in reaching. (Tr. 837-38). Although there are no treatment notes for the period March 2011 to October 2012, in April 2012 Dr. Colosimo assessed plaintiff as unable to perform any lifting. (Tr. 839-40). In March 2013, Dr. Colosimo opined that plaintiff's lifting capacity had increased to 10 pounds occasionally and 5 pounds frequently. (Tr. 781-82). Given the discrepancies in Dr. Colosimo's assessments as to plaintiff's lifting capacity and the lack of objective evidence to support the severe lifting limitations Dr. Colosimo imposed, the ALJ reasonably discounted Dr. Colosimo's assessments on this ground.

Similarly, the ALJ reasonably determined that the medical evidence of record did not support the sitting and standing/walking restrictions imposed by Dr. Colosimo, which varied from one assessment to the next without explanation. When seen two weeks post status left knee hardware removal, plaintiff was "doing well" and she had full range of motion of the knee and crepitus throughout the range of motion; she was neurovascularly intact distally; and the calf was nontender with negative Homans' sign.[5] (Tr. 686). On November 23, 2010, three weeks after surgery, the same objective findings were reported and Heather Kennedy, P.A., with Dr. Colosimo's practice noted that plaintiff was "doing absolutely wonderful at this point in time." (Tr. 685). Plaintiff reported she was not going to have a total knee replacement until some point during the following year because she "just want[ed] to recover well and continue on at this point." (Id.). Plaintiff was to continue with physical therapy. (Id.). On December 14, 2010, plaintiff was reportedly "doing wonderful" with "minimal complaints." (Tr. 684). Objective

_____

[5] Homans' sign is "pain in the calf of the leg upon dorsiflexion of the foot with the leg extended that is diagnostic of thrombosis in the deep veins of the area." http://www.merriam-webster.com/medical/Homans'%20sign.

findings were essentially negative with crepitus throughout full range of motion of the knee and a possible neuroma. Plaintiff stated that she "would like to hold off on the total knee arthroplasty as long as possible." (*Id.*). Although a course of physical therapy was recommended, plaintiff attended only four physical therapy sessions in November and December 2010 and she cancelled or failed to show for eight to nine appointments, resulting in her discharge from the program for noncompliance. (Tr. 642-60). An MRI of the right hip performed on March 16, 2011, showed only a "subtle small spur" and a "mild distention" at one level." (Tr. 682).

In the March 2013 assessment, Dr. Colosimo listed plaintiff's diagnoses as left knee tri-compartmental osteoarthritis, lumbar spine osteoarthritis, and right hip pain with a possible labral tear and osteoarthritis. (Tr. 780). He opined that plaintiff required a total left knee arthroplasty and he restricted plaintiff to standing/walking a total of 1-2 hours in an 8-hour workday and 15 minutes without interruption. (Tr. 781). Despite Dr. Colosimo's findings, plaintiff reported that her left knee had "been doing okay" since undergoing arthroscopic surgery and left knee hardware removal in preparation for a total knee replacement, and she elected not to proceed with the knee replacement at that point in time. (Tr. 790). Dr. Colosimo also reported that hip x-rays from 2009 showed "very minimal degenerative changes and no acute abnormalities," and he noted that plaintiff did not want to undergo surgery on the hip even if abnormal findings were disclosed. (*Id.*). Dr. Colosimo ordered MRIs, which were unremarkable for the shoulder and hip and showed "high grade full patellar chondromalacia and maltracking" of the right knee. (Tr. 788). The possibility of treating the right knee with injections was discussed with plaintiff, but she declined by stating she was "not ready for that." (*Id.*).

12

Thus, although there is objective support for some standing and walking restrictions, the ALJ reasonably concluded that the severe restrictions Dr. Colosimo assessed over the course of his treatment of plaintiff were not substantially supported by the evidence. The ALJ likewise reasonably rejected the sitting restrictions Dr. Colosimo assessed as unsupported by the objective evidence. The limitations ranged from no restrictions in this area of functioning in March 2010 to restricting plaintiff to 4 hours of sitting in an 8-hour workday in April 2011, 5 hours in April 2012, and 6 hours in March 2013. (Tr. 835, 837-38, 839-40, 780-85). Dr. Colosimo provided no explanation for the changes in this particular area of functioning. Accordingly, the ALJ's finding that Dr. Colosimo's assessments of plaintiff's sitting limitations were not supported by the objective medical evidence finds substantial support in the record.

In addition, the ALJ reasonably determined that the restrictions Dr. Colosimo assessed were not consistent with plaintiff's activities of daily living, which required plaintiff to lift, bend, walk, stand and sit. (Tr. 33). Plaintiff reported to Professional Clinical Counselor Deborah Grooms, PCS, at Centerpoint Health in February 2010 that she had joined a gym because she wanted to lose weight. (Tr. 668-69). Plaintiff reported that her family leisure activities included going to the movies, visiting friends, fundraising for school, and swimming in the summer. (Tr. 671). She spent time with friends watching movies, going to the park, exercising together, dining out, and barbequing. (*Id*.). Ms. Grooms reported in February 2011 that plaintiff was able to prepare food, perform household chores, shop (until panic attacks occurred), and drive. (Tr. 667). There is no indication in Ms. Grooms' notes that plaintiff was physically restricted in her ability to perform these activities. The ALJ reasonably relied on plaintiff's reports of daily activities in determining the weight to afford Dr. Colosimo's opinion. *See* 20 C.F.R. §

13

416.929(c)(3)(i) (authorizing an ALJ to consider activities when evaluating pain and functional limitations).

Although the ALJ cited extensively to the record in deciding to give "little weight" to Dr. Colosimo's opinion, plaintiff alleges that the ALJ erred by discounting Dr. Colosimo's opinion because the ALJ did not rely on another medical opinion in doing so and in fashioning the RFC. (Doc. 20 at 4, citing *Hall v. Celebrezze*, 314 F.2d 686, 689-90 (6th Cir. 1963) (Appeals Council erred by rejecting uncontradicted opinions of the plaintiff's two treating physicians that the plaintiff could not perform any physical work)). The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), 404.1546(c), 416.946(c). *See also Moore v. Astrue*, No. CIV.A. 07-204-HRW, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)). "The decision regarding a claimant's residual functional capacity is expressly reserved for the Commissioner, not physicians." *Moore*, 2008 WL 2051019, at *5 (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004)). The ALJ must make decisions concerning which evidence to accept when faced with conflicting evidence in the record. *Id.* (citing *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984)). However, the "ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio

14

April 14, 2008) (Beckwith, J.) (citations omitted); *Hammock v. Comm'r of Soc. Sec.*, No. 1:12-cv-250, 2013 WL 1721943, at *8 (S.D. Ohio Apr. 22, 2013) (Report and Recommendation) (Bowman, M.J.), *adopted,* 2013 WL 4080714 (S.D. Ohio Aug. 13, 2013) (Beckwith, J.).

Plaintiff alleges that the ALJ was not qualified to reject Dr. Colosimo's assessments, interpret the medical records, and formulate an RFC that deviated from the treating physician's findings. A review of the ALJ's opinion and the evidence of record refutes plaintiff's position that the ALJ erroneously substituted his opinion for that of plaintiff's treating orthopedist. (Tr. 28-33). The ALJ extensively reviewed the medical and other evidence when assessing the severity of the limitations imposed by plaintiff's knee and shoulder injuries and other physical complaints. (Tr. 28-33). The ALJ reasonably relied on objective medical findings, plaintiff's subjective reports, and plaintiff's activities to discount the severe limitations imposed by Dr. Colosimo. Although the ALJ discounted Dr. Colosimo's opinions, the ALJ also adopted a number of the less severe restrictions imposed by Dr. Colosimo in his most recent assessment in limiting plaintiff to sedentary work with additional restrictions. Plaintiff has not provided any other objective medical evidence to support more severe physical restrictions than those imposed by the ALJ. The ALJ made a decision based on conflicting evidence of record, including conflicts in Dr. Colosimo's own assessments, and supported his decision with ample citations to the record. The ALJ did not err by discounting Dr. Colosimo's opinion and fashioning an RFC that incorporated only those limitations that the ALJ found to be substantially supported by the evidence of record.

**b. Primary care physician Dr. Peake**

Plaintiff alleges that the ALJ erred by crediting the consultative examining psychologists' assessments of plaintiff's mental functioning over the mental health assessment of plaintiff's primary care physician, Dr. Peake. (Doc. 13 at 12). Dr. Peake treated plaintiff for depression with anxiety, anger outbursts, and ADHD/ADD. (Tr. 832-34). She prescribed Prozac, Xanax and Adderall XR to treat plaintiff's mental health symptoms. (*Id.*). Dr. Peake completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) on April 2, 2013. (Tr. 829-31). Dr. Peake opined that plaintiff's ability to follow work rules, use judgment and function independently was fair (limited but satisfactory); her ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention and concentration, and persist at work-like tasks was poor (seriously limited but not precluded); her ability to understand, remember and carry out simple job instructions was good; her ability to understand, remember and carry out detailed but not complex job instructions was fair; her ability to understand, remember and carry out complex job instructions was poor; and her ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability was poor. (Tr. 829-30).

The ALJ gave "little weight" to Dr. Peake's opinion because she is not a mental health expert, her treatment notes did not support her assessment, and her opinion appeared to be based almost entirely on plaintiff's self-report from the date of the assessment. (Tr. 34, citing Tr. 828-834). Plaintiff acknowledges that the ALJ discounted Dr. Peake's opinion because mental health is not her specialty and because the ALJ found her treatment notes did not support her assessment. (Doc. 13 at 12). However, plaintiff alleges these are not "good reasons" for

16

discounting the treating physician's opinion and that the ALJ's comments "are without substance." (*Id.*).

The ALJ thoroughly reviewed the evidence of record and gave "good reasons" which are substantially supported by the record for discounting Dr. Peake's assessment of plaintiff's mental limitations. (Tr. 34). The ALJ reasonably discounted Dr. Peake's opinion based on her lack of specialization in the field of mental health. (Tr. 34). *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

The ALJ also reasonably determined that Dr. Peake's treatment notes did not support her assessment. Dr. Peake reported in her April 2, 2013 assessment that plaintiff was "[e]xtremely distractable [sic] due to ADHD." (Tr. 830). However, the progress notes from that same date state that plaintiff's ADD/ADHD medication had been "mostly effective" with residual symptoms in the late afternoon and evening. (Tr. 832). Plaintiff asked that the afternoon dose of medication be increased "slightly." (*Id.*). Earlier progress notes report that after being prescribed Adderall following an evaluation for ADD in April 2008 (Tr. 628), plaintiff's ADD/ADHD was "stable" or "well-controlled." (Tr. 625- 9/30/08; Tr. 623- 12/30/08; Tr. 621- 3/24/09; Tr. 620- 6/19/09; Tr. 619- 7/20/09; Tr. 616- 8/25/09; Tr. 608- 9/22/09; Tr. 618- 12/21/09; Tr. 617- 10/22/09; Tr. 614- 1/19/10; Tr. 612- 4/13/10; Tr. 611- 7/20/10; Tr. 610- 10/26/10). Further, the treatment notes do not support Dr. Peake's "poor" assessment of plaintiff's ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Tr. 830). The April 2, 2013 progress notes state that plaintiff reported a history of "anger

outbursts," and Dr. Peake noted that plaintiff had previously informed her that she does not like people and prefers to be alone. (Tr. 832). However, as noted earlier, plaintiff reported to Ms. Grooms at Centerpoint Health that she engaged in numerous social activities with family and friends, including going to the movies, visiting friends, fundraising for school, going to the park, exercising together, dining out, and barbequing. (Tr. 671). Plaintiff has not cited other evidence in the record that supports Dr. Peake's assessment of plaintiff's abilities in these areas.

Finally, the ALJ properly considered the extent to which Dr. Peake's opinion was supported by objective evidence as opposed to plaintiff's subjective allegations. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Objective evidence in the psychiatric/psychological context includes "medical signs," 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1), which are defined as "psychological abnormalities which can be observed, apart from your statements (symptoms). . . . Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. §§ 404.1528(b), 416.928(b). As indicated above, the serious limitations imposed by Dr. Peake conflicted with her own treatment notes reflecting stable ADD/ADHD symptoms which were largely controlled. In addition, plaintiff has not directed the Court to clinical observations by Dr. Peake which would support her assessment.

Instead of crediting the mental health assessment issued by Dr. Peake, the ALJ gave "good weight" to the assessments of the consultative examining psychologists, Dr. Richard

18

Sexton, Ph.D., and Mr. Dale Seifert, M.S. Ed. (Tr. 34). Mr. Seifert conducted a clinical interview of plaintiff and administered psychological tests on April 27, 2007, in connection with her prior applications for disability benefits. (Tr. 370-76). Mr. Seifert opined that plaintiff has borderline intellectual functioning. (Tr. 375). He assessed plaintiff as having moderate limitations in her ability to relate to others, including coworkers and supervisors; mild limitations in her ability to understand and follow instructions; mild limitations in her ability to maintain attention to perform simple, repetitive tasks; and moderate limitations in her ability to withstand the stress and pressures associated with day-to-day work activity due to her depression and anxiety. (*Id.*). Dr. Sexton evaluated plaintiff on December 21, 2011. (Tr. 771-78). Dr. Sexton determined that plaintiff's intelligence fell at the low end of the low average range. (Tr. 776). Dr. Sexton opined that plaintiff could "understand and apply instructions in the work setting consistent with low [a]verage intellectual functioning"; she would not be expected to demonstrate difficulties in the area of maintaining attention/concentration and in maintaining persistence/pace to perform simple/multi-step tasks; she had "[s]ome limitations in her ability to conform to social expectations in a work setting"; and she was "expected to respond appropriately to work place pressures." (Tr. 777-78).

Substantial evidence supports the ALJ's decision to credit the opinions of the examining mental health providers over the mental health assessment of plaintiff's primary care physician. The ALJ thoroughly reviewed the evidence related to Mr. Seifert and Dr. Sexton's assessments and gave "good weight" to their opinions based on their supporting findings, plaintiff's activities, and medical evidence showing that plaintiff's ADHD and anxiety were controlled with medication. (Tr. 32, 34-35). Plaintiff alleges that no "objective evidence" contradicts Dr.

19

Peake's evaluation except for unspecified, selected aspects of the mental health providers' examinations, and then only "to some extent." (Doc. 20 at 6). However, the ALJ was entitled to rely on the consultative examinations, which he reasonably concluded were supported by the evidence for the reasons explained in his decision. (Tr. 34-35). Plaintiff further alleges that the ALJ erred because Mr. Seifert's evaluation predates the alleged onset date by more than two years. (Doc. 13 at 6; Doc. 20 at 3). However, plaintiff has not shown that her mental symptoms changed significantly following Mr. Seifert's evaluation or that his opinion differs materially from that rendered by Dr. Sexton, who examined plaintiff nearly four years later.

### c. Conclusion

The record demonstrates that the ALJ reasonably discounted the opinions of plaintiff's treating orthopedist and the mental health assessment provided by plaintiff's primary care physician. The ALJ gave "good reasons" for affording less than controlling weight to the opinions of Drs. Colosimo and Peake, and those reasons are substantially supported by the record. Plaintiff's second assignment of error should be overruled.

### 2. The ALJ's credibility finding (Third assignment of error)

Plaintiff alleges as her third assignment of error that the ALJ erred in assessing her credibility. (Doc. 13 at 12-13). Plaintiff alleges that the ALJ did not cite physical activities she performed that are consistent with the performance of sedentary work; instead, the ALJ erroneously relied on plaintiff's performance of household chores and activities such as watching television and listening to music to discount her credibility. (*Id.*, citing Tr. 82-86, 32).

Title 20 C.F.R. §§ 404.1529, 416.927 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including

pain.  First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c), 416.927(c); SSR 96-7p.

       In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981).  Nonetheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).  "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review."  *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Here, the ALJ's credibility determination is substantially supported by the record and is entitled to deference. In determining credibility, the ALJ may consider the claimant's testimony of limitations in light of other evidence of the claimant's ability to perform other tasks such as walking and exercising, going to church, going on vacation, cooking, and other household and social activities. *Heston v. Commissioner*, 245 F.3d 528, 536 (6th Cir. 2001); *Blacha v. Secretary*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392-93 (6th Cir. 2004) (citing *Walters,* 127 F.3d at 532) ("An [administrative law judge] may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). The ALJ reasonably considered plaintiff's ability to perform activities of daily living and her social activities when assessing the credibility of her complaints of disabling pain and mental limitations. Evidence showing that plaintiff attended movies with family and friends, visited friends, participated in fundraising for school, dined out, performed household chores such as cooking and vacuuming, drove on a daily basis, went shopping, and traveled significant distances for vacation casts doubt on her assertions of debilitating pain and mental impairments. (*See* Tr. 352, 373, 671, 373, 832, 841).

In addition, the ALJ considered evidence other than plaintiff's activities of daily living and social activities in determining that plaintiff's complaints were not fully credible. The ALJ properly discounted plaintiff's disability based on evidence showing that plaintiff failed to fully comply with prescribed treatment and treatment advice. (Tr. 31). *See* SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for

this failure."). The record shows that plaintiff was discharged from physical therapy for noncompliance after attending only four of 12 to 13 physical therapy sessions in November and December 2010. (Tr. 642-60). Physical therapy records dated December 2007 indicate that plaintiff refused to wear an unloader brace on her left knee, which Dr. Colosimo had supplied to her, after undergoing surgery on the knee earlier that month. (Tr. 427). Those records further indicate that plaintiff was not using a crutch, which she had discontinued using "on her own." (*Id.*). In May 2008, Dr. Colosimo had advised plaintiff that narcotic pain management was not the best long-term option for her and she was "to modify her activities, lose weight, continue to do [physical therapy], stay on an anti-inflammatory, quit smoking . . . and [be] completely off narcotics and off benzodiazepines[.]" (Tr. 699). The record does not show that plaintiff followed through on her treating orthopedist's suggestions despite her complaints of disabling pain.

Further, the ALJ reasonably relied on evidence that pain management treatment helped to alleviate plaintiff's pain to discount her complaints of debilitating pain. Plaintiff reported on multiple occasions that her back pain improved with treatment and that a back brace was effective in alleviating her pain. (Tr. 30-31, citing Tr. 800, 802, 805, 809).

For these reasons, the ALJ did not err in discounting plaintiff's complaints of pain and mental limitations. The ALJ conducted a thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record and other pertinent evidence. (Tr. 28-33). Substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff does not suffer from debilitating pain and mental limitations but retains the RFC to perform a reduced range of sedentary work with nonexertional restrictions. The ALJ's credibility

23

finding is entitled to deference.  Plaintiff's third assignment of error should be overruled.

### 3. The ALJ's step five finding (First assignment of error)

Plaintiff alleges as her first assignment of error that the ALJ's finding at step five of the sequential evaluation process is not supported by substantial evidence because the hypothetical question posed to the VE does not accurately portray her physical and mental impairments. Plaintiff alleges that the ALJ's hypothetical to the VE did not take into account the following limitations: (1) plaintiff's borderline intellectual ability, her "extremely low memory abilities in several areas," and her third grade reading ability as demonstrated on the psychological tests administered by Mr. Seifert in 2007 (Tr. 370-76); (2) a restriction against all lifting; (3) a restriction against all work stress, which plaintiff suggests was assessed by Dr. Peake (Tr. 829-31); (4) a restriction against any interaction with supervisors, which plaintiff suggests was assessed by Dr. Peake and by Ms. Grooms (Tr. 829-31, 823-27); (5) extreme limitations on performing activities according to schedule and completing a normal work day and week without interruption, which plaintiff appears to suggest were imposed by Ms. Groons (Tr. 823-27).[6] (Doc. 13 at 10).  Plaintiff alleges when all of her physical and mental limitations are taken into account, there are not a significant number of jobs in the national economy she could perform. (Doc. 13 at 10-11).

In assessing the availability of jobs at step five of the sequential evaluation process, the ALJ may rely upon the testimony of a vocational expert.  Such testimony can constitute substantial evidence, but it "must be given in response to a hypothetical question that accurately

---

[6] Although plaintiff suggests that Dr. Peake imposed restriction against *any* work stress and interaction with supervisors (Doc. 13 at 10, citing Tr. 829-31), Dr. Peake actually rated plaintiff's ability to function in this area as "poor," which the assessment defined as "seriously limited, but not precluded."  (Tr. 829).

describes the plaintiff in all significant, relevant respects." *Felisky v. Bowen*, 35 F.3d 1027, 1036

(6th Cir. 1994). *See also Howard v. Comm'r of Social Sec.,* 276 F.3d at 239, 241 (6th Cir. 2002)

(in order for a VE's testimony in response to a hypothetical question to serve as substantial

evidence in support of the conclusion that a claimant can perform other work, the question must

accurately portray a claimant's physical and mental impairments); *Webb v. Comm'r of Soc. Sec.,*

368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions,

the hypothetical should provide the VE with ALJ's assessment of the what the claimant "can and

cannot do.").

Here, the ALJ posed a hypothetical to the VE at the ALJ hearing that was consistent with

the RFC finding.  The hypothetical incorporated the following restrictions: the individual could

perform sedentary work with "occasional posturals"; no more than two hours of overhead

reaching in an eight-hour workday; no use of foot controls with the left foot; the ability to

understand, remember and carry out simple, routine and repetitive tasks; the ability to maintain

attention and concentration for two-hour periods with normal breaks; the ability to interact

appropriately with coworkers and supervisors on a superficial level; no more than occasional

contact with the general public; no high production quotas; and no exposure to hazardous

machinery or unprotected heights. (Tr. 90-91).  In response to the ALJ's hypothetical, the VE

testified there are 800 unskilled sedentary jobs in the region and 70,000 such jobs in the national

economy that the hypothetical individual with those limitations would be able to perform.  (Tr.

90).  When questioned by plaintiff's counsel, the VE testified that if the hypothetical individual

were unable to lift any weight, she could not perform the jobs he identified.  (Tr. 95).  The VE

also testified that the hypothetical individual would need to tolerate work stress and interact with a supervisor to perform any of the jobs the VE identified.  (Tr. 96-97).

The ALJ did not err by failing to include the additional limitations identified by plaintiff in the hypothetical.  The ALJ rejected the restriction against any lifting imposed by Dr. Colosimo, and he adopted the less extreme limitations on social interaction and other areas of mental functioning imposed by Mr. Seifert and Dr. Sexton for reasons that find substantial support in the record.  (*See* § D.1, *supra*).  The hypothetical presented to the VE accurately portrayed plaintiff's physical and mental impairments.  The step five finding is substantially supported by the evidence.  Plaintiff's first assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: ___1/6/16___

Karen L. Litkovitz
United States Magistrate Judge

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SHENA LYNN SIMPSON,                           Case No. 1:14-cv-801
     Plaintiff,                                 Dlott, J.
                                                                Litkovitz, M.J.
   vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).